IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA W. WATSON,
          Plaintiff,

v.                                       Civil Case No. 3:23cv721

RICHARD KEITH NEWMAN, et al.,
          Defendants.

## OPINION

The *pro se* plaintiff, Donna W. Watson, has sued twenty-two defendants for their alleged role in the death of her son, Troy Wayne Howlett. Watson's claims roughly fall into two categories. The first category arises from the actions of some defendants during Howlett's work as a cooperating individual ("CI") for the City of Hopewell Police Department ("HPD"). The second category arises from the actions of other defendants at Howlett's funeral.

The twenty-two defendants have filed three motions to dismiss and a motion for judgment on the pleadings. One group of defendants—the "RCJA defendants"—consists of Riverside Criminal Justice Academy ("RCJA"), Carolyn Leigh Romero, and Bettina Coghill. A second group—the "Hopewell defendants"—includes The City of Hopewell ("City"), HPD, retired Police Chief John Keohane, Hopewell City Attorney Danielle Smith, Sergeant Jacquita Allen, Detective Christopher Hewett, and the various HPD officers involved in Howlett's initial arrest and funeral[1] and Watson's later Freedom of Information Act ("FOIA") requests.[2]

---

[1] Sergeant Trevor Terry, Sergeant David Hirn, Chief of Police Gregory Taylor, Captain Michael Whittington, and officers Brian Orange, Sean Grant, Kevin Johnson, Derrick Griffin, Anthony McCurry, William Sciacca.

[2] FOIA Officer Marta Leon.

The RCJA defendants, the Hopewell defendants, and Hopewell Commonwealth's Attorney Richard Keith Newman each filed a motion to dismiss. (ECF Nos. 10, 28, 31.)  Another defendant, J.T. Morriss & Son Funeral Home, filed a motion for judgment on the pleadings. (ECF No. 25.)[3]

Watson contends that her claims arise under 42 U.S.C. § 1983.  Both Claims I and II assert violations of various state laws and legal duties, but most relevant, they include allegations of negligence, wrongful death, and intentional infliction of emotional distress ("IIED").[4]  In Claim I, Watson alleges that certain defendants violated those laws and duties in their individual capacities. In Claim II, Watson alleges that certain defendants violated those laws and duties in their "[s]upervisory" capacities.  (ECF No. 3, at 7.)  Claims III, IV, and V assert various "14th Amendment Claim[s]."  (*Id.* at 7–8).  Claim VI alleges a *Monell* claim.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).[5]

---

[3] Watson responded with a letter motion to strike, which requested "that all pretrial motions submitted via legal representation of the defendants be deemed and formally documented as withdrawn." (ECF No. 48, at 1.) Her motion to strike relies on Local Civil Rule 7(E), which says that "[u]nless otherwise ordered, a motion shall be deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within thirty (30) days after the date on which the motion is filed."

"[T]he application of the local rules is within the discretion of the Court." *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1236 n.3 (E.D. Va. 1996). The parties here have fully set out the facts and legal arguments in their briefings, and Watson has filed several sur-replies. (ECF No. 34; ECF No. 46; ECF No. 47.) The Court therefore finds a hearing unnecessary and will deny Watson's motion to strike. *See Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.,* No. 3:19cv89, 2020 WL 6370987, *5 (E.D. Va. Oct. 29, 2020) (finding a hearing under Local Civil Rule 7(E) unnecessary because the briefing "adequately [presented] the facts and legal contentions").

[4] As explained *infra*, Watson has not identified any constitutional violation cognizable as a violation of federal law under § 1983. But considering Watson's *pro se* status, the Court will also construe Claims I and II as alleging state law claims of negligence, wrongful death, and IIED.

[5] For consistency's sake, the Court uses the numbering for the claims from pages 10 through 28 of the complaint. Although Watson does not number her *Monell* claim in her complaint, the Court will cite it as Claim VI.

Case 3:23-cv-00721-JAG   Document 59   Filed 08/21/24   Page 3 of 15 PageID# 1128

For the reasons explained below, all of Watson's claims fail. Both res judicata and the applicable statutes of limitations preclude Watson from bringing Claims I and II. For Claim III, Watson has not pleaded a valid underlying federal right to justify her *Monell* claim. Nor has she pleaded cognizable Fourteenth Amendment claims for Claims IV, V, and IV. The Court will therefore grant the defendants' motions to dismiss and motion for judgment on the pleadings.

## I. BACKGROUND[6]

On April 11, 2018, HPD officers Anthony McCurry and Derrick Griffin arrived at a Community FoodMart for a call about a possible medical emergency. They found Howlett in his car suffering a drug overdose and called for an ambulance. As Griffin and McCurry waited for the ambulance to arrive, they searched the car. They found a folded lottery ticket containing an unknown substance in Howlett's right hand, which they determined was cocaine. Based on the cocaine, the officers would later arrest Howlett and charge him with felony possession of controlled substances. The officers did not try to help Howlett during his medical emergency.

Paramedics eventually arrived and administered two doses of Narcan to Howlett while on the way to the hospital. Howlett tested positive for opioids, cocaine, marijuana, and benzodiazepine.

As Howlett recovered in the hospital, Detective Jacquita Allen asked him to become a CI who would help police with conducting controlled drug buys. To remain a CI, Howlett could not use any illegal substances. Howlett would also have to attend consistent appointments with Detective Allen and other RCJA officers to assess his progress. In exchange, Howlett would

---

[6] Watson's complaint fully explains the events surrounding Howlett's recruitment as a CI, his death, and his funeral. The Court has considered all the facts alleged by Watson when considering her motion. In the interest of judicial efficiency, however, the Court will only recite those facts necessary to resolve the claims.

remain on pretrial release for his felony possession charge.  If he did not comply with the conditions, the police would arrest him.  Howlett agreed.

Howlett had his first appointment as a CI on April 16, 2018.  He met with his pretrial officer, Carolyn Romero, who tested Howlett to evaluate his risk of relapse and drug use.  While Howlett's performance on some tests indicated a low risk of relapse, his urine sample showed the presence of alcohol, marijuana, cocaine, and benzodiazepines.  Despite the positive drug tests, Howlett's "title" in Romero's notes eventually changed from "S," for "subject," to "CI." Commonwealth's Attorney Richard Newman and Detective Christopher Hewett, director of the Crime Suppression Unit, also approved engaging Howlett as a CI.

While working as a CI, Howlett told Detective Allen that "he 'needed help' with his opioid addiction."  (*Id.* at 12.)  Howlett continued to fail urine screenings, up to three separate times in three months.  Romero finally issued a capias at the direction of Bettina Coghill, director of RCJA, when Howlett's urine tested positive for drugs again on June 20, 2018.  Though filed between June 21 and 29, 2018,[7] no one acted on the capias.  Romero eventually filed a second capias triggered by a separate perceived violation of CI terms.  (*Id.* at 21, 27.)

Between July 9 and 17, 2018, Howlett went to the hospital to receive treatment for major depression and opioid dependency.  During his hospitalization, Watson scheduled an RCJA appointment on Howlett's behalf for July 23, 2018.  (*Id.* at 21.)  Howlett mistakenly believed Watson scheduled the appointment for July 20, however, and called Romero on July 20 to

---

[7] Watson's complaint varies on the exact submission date of the capias.  Some pages pin the date as June 21.  (ECF No. 3, at 28 ("[Newman]… has knowledge of a submitted capias by . . . Romero on 6/21/18"); *id.* at 11 ("a capias was submitted on Howlett for pretrial violation on June 21, 2018").)  Other pages say June 29.  (*Id.* at 23 ("[Newman] is aware that a capias was faxed to his office . . . on 6/29/18"); *id.* at 29 ("capias submitted 6/29/18, was never followed up on").)  Those discrepancies do not affect the Court's conclusions.

reschedule. Romero construed Howlett's attempt to reschedule as a missed appointment—a violation of Howlett's CI conditions—so Romero issued another capias the same day. Again, no one acted on the capias, and Howlett continued working as a CI.

Howlett completed his final controlled buy for Detective Allen on July 27, 2018. Three days later, Watson discovered Howlett's dead body. According to the medical examiner, Howlett died of a "heart condition or medical condition, [or] natural causes." (*Id.* at 39.)

Watson contracted with JT Morriss Funeral Home ("Morriss") for an August 3 funeral for Howlett. Certain defendants, however, twice interrupted the funeral service to arrest Rodney Peace, a funeral attendee and friend of Howlett. First, HPD police officers Trevor Terry, David Hirn, Brian Orange, Gregory Taylor,[8] Sean Grant,[9] Kevin Johnson, William Sciacca, and Michael Whittington arrested Peace twenty minutes into the service. Morriss's owners knew that Peace was a fugitive and of the police's plans to arrest Peace at the funeral, but they never warned Watson of the impending arrest. Second, the officers escorted Peace back into the funeral forty-five minutes after arresting him. The staff at Morriss never tried to prevent the police's reentry. An "emotional" and handcuffed Peace "scream[ed] and flail[ed]" and nearly knocked over the casket while trying to hug Howlett's body. (*Id.* at 13, 38.)

Watson later emailed Hopewell City Attorney Danielle Smith, requesting all information about Howlett's CI work and the officers at the funeral. Smith forwarded the email to FOIA

---

[8] Taylor now serves as HPD's chief of police.

[9] The complaint names "Officer Sean Patrick Grant." (ECF No. 3, at 2.) The Hopewell defendants say that while an officer named Shawn Grant works for HPD, the contact information in the complaint for "Sean Grant" does not belong to him, and "Shawn Grant was not working on the day in question." (ECF No. 29, at 3.) This possible discrepancy does not affect the Court's analysis.

Officer Marta Leon, who told Watson that releasing such information violated FOIA and that "the records were extracted and no longer available." (*Id.* at 12, 20, 39.)

Since Howlett's death, Watson has been diagnosed with anxiety, major depressive disorder, post-traumatic stress disorder, insomnia, and gastrointestinal reflux disorder.

## II. <u>LEGAL STANDARD</u>

A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the evidentiary merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must therefore state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The same standard applies to motions for judgment on the pleadings. *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013).

Courts must liberally construe *pro se* complaints. *See King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). But the "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts need not "explore exhaustively all potential claims of a *pro se* plaintiff," *id.*, or try "to discern the unexpressed intent of the plaintiff," *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th

6

Cir. 2006). "[T]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett*, 775 F.2d at 1276.

### III. <u>DISCUSSION</u>

#### A. *Claims I and II*

##### 1. <u>*Section 1983 Claims*</u>

Watson's complaint describes Claims I and II as "Section 1983 Claim[s]." (ECF No. 3, at 7.) For a § 1983 claim, a plaintiff must show that he or she suffered a deprivation "of a federal statutory or constitutional right." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Claims I and II, however, allege violations of various state laws and legal duties not cognizable under § 1983. Specifically, Watson asserts violations of Virginia's overdose-amnesty statute (Va. Code § 18.2-251.03) and disorderly-conduct statute (Va. Code § 18.2-415), and further alleges that certain defendants violated the "Freedom of Information Act (FOIA)." (ECF No. 3, at 10.) She also asserts claims for "ordinary" and "gross negligence," wrongful death, and intentional infliction of emotional distress. (*Id.* at 10–11.) Finally, she alleges certain defendants engaged in "coercion" when enlisting Howlett as a CI. (*Id.* at 11.) Yet none of Watson's allegations for Claims I and II invoke a federal right.

First, Watson does not explain how Virginia's overdose-amnesty statute and criminal disorderly-conduct statute implicate the United States Constitution or a federal statute. Nor do those laws establish independent causes of action under which Watson can sue the named defendants.

Second, although Watson accuses some of the defendants of "coercion," she cites no statute or authority allowing her to raise such a claim.

Third, although Watson does not specify whether she brings her FOIA claim under state or federal law, her claims fail under both. The federal FOIA statute applies only to federal agencies acting within "authority of the Government of the United States." 5 U.S.C. § 551(1). But Smith and Leon, who Watson claims violated FOIA, worked for the City of Hopewell—a local government. The federal FOIA, therefore, does not apply. Nor can Watson assert a violation of the Virginia FOIA under § 1983. "A violation of the Virginia FOIA does not implicate a federal statutory or constitutional right because it is a state law." *Melby v. Morgan*, No. 3:22cv134, 2022 WL 17852781, *5 (E.D. Va. Dec. 22, 2022). Thus, Watson cannot use § 1983 to assert a violation of Virginia FOIA. Accordingly, the Court will dismiss Claims I and II to the extent they purport to bring claims under § 1983.[10]

### 2. *State Law Claims*

As for her allegations of negligence, wrongful death, and IIED, Watson does not explain how these allegations involve violations of federal rights. Because she has not identified federal rights to justify a § 1983 claim, the Court liberally construes Claims I and II as state-law claims for negligence, wrongful death, and IIED. For the following reasons, the Court will dismiss those claims based on res judicata and the statute of limitations.

---

[10] In addition to these flaws, Watson's § 1983 claims improperly target Morriss. Morriss is a private funeral home. Yet § 1983 generally applies to only public entities. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930–932 (1982). Although in some limited circumstances a plaintiff can sue a private actor under § 1983, those circumstances do not exist here. *See Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993) (describing the exceptions).

### a. Claim Preclusion

Both the Hopewell defendants and Newman argue that res judicata, or claim preclusion, prevents Watson from bringing claims against them because she brought substantively the same claims in two previous state-court suits. Res judicata applies across federal and state proceedings.[11] Under the doctrine of res judicata, a final judgment in one case resolves not just "every question actually raised and decided" in that case, but also "every claim which properly belonged to the subject of [that] litigation and which the parties, by exercise of reasonable diligence, might have raised at the time." *Smith v. Holland*, 124 Va. 663, 666, 98 S.E. 676, 676 (1919). Thus, the same plaintiff cannot sue the same defendants and raise issues "incident to or essentially connected with the subject matter of the [original] litigation," regardless of whether the court originally considered those issues or not. *Lofton Ridge, LLC v. Norfolk S. Ry.*, 268 Va. 377, 381, 601 S.E.2d 648, 650 (2004) (quoting *Kemp v. Miller*, 166 Va. 661, 674–75, 186 S.E. 99, 103– 04 (1936)). In that way, claim preclusion acts as a "could-have-litigated-should-have-litigated principle." *Va. Imports, Ltd. v. Kirin Brewery of Am., LLC*, 50 Va. App. 395, 410 n.6, 650 S.E.2d 554, 561 (2007).

For Watson's two previous state-court suits, she retained counsel and filed her cases in Chesterfield County Circuit Court. Watson brought the first lawsuit[12]—a wrongful death action—

---

[11] 28 U.S.C. § 1738 requires that federal and state "judicial proceedings . . . have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." *Id.* If a judgment would have preclusive effect under state law, it will also have preclusive effect in federal courts. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000).

[12] Case No. CL20002221-00.

on July 28, 2020. (ECF No. 29-1, at 21–48.)[13] She alleged "gross negligence," "intentional harm," "civil conspiracy," and "negligence" related to Howlett's time as a CI and his subsequent death, and she named many of the same defendants she has named in the instant lawsuit, including: HPD, Allen, Keohane, and Newman.

Her second lawsuit,[14] filed on July 28, 2020, alleged "tortious interference with contractual relations and business expectancy," "intentional infliction of emotional distress," and "civil conspiracy" because the police officers' interrupted Howlett's funeral. (ECF No. 29-2, at 19–29.) Watson sued Terry, Hirn, Nichols, Orange, Taylor, Koehane, Grant, Johnson, Whittington, Sciacca, and HPD—all of whom she has sued in the instant case.

The state court sustained the defendants' demurrers, special pleas of sovereign immunity, and pleas in bar for illegality defense, and dismissed the cases with prejudice. (ECF No. 29-1, 87–90; ECF No. 29-2, 55–57.)[15]

"In Virginia, claim preclusion is governed by Rule 1.6." *Lee v. Spoden*, 290 Va. 235, 246, 776 S.E.2d 798, 804 (2015). Under Rule 1.6, a prior judgment has preclusive effect if a court finds "(1) that the prior judgment is a final and valid judgment; (2) that the parties are identical or are in privity with each other; and (3) that the claim made in the subsequent lawsuit arises out or relates to the same occurrence, conduct, or transaction upon which the prior lawsuit was based."

---

[13] The state court granted Watson leave to amend her complaint to correct a minor error on November 30, 2020, and she subsequently filed an amended complaint. (*See* ECF No. 29-1, at 34–37.)

[14] Case No. CL20-2222.

[15] The Virginia Supreme Court refused Watson's appeal petitions and denied her petitions for rehearing. (ECF No. 29-1, at 87–92; ECF No. 29-2, at 55–59.) The Chesterfield County Circuit Court denied her motions to reopen the cases. (ECF No. 29-1, at 93–94; ECF No. 29-2, at 60–61.)

*Columbia Gas Transmission v. David N. Martin Revocable T.*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011).

The judgments in Watson's previous state court cases meet all three of these requirements. First, the Chesterfield County Circuit Court issued final judgments on the merits of her claims when it sustained the defendants' demurrers and pleas in bar and dismissed the cases with prejudice. *See Astrop v. Eckerd Corp.*, No. 3:09cv681, 2010 WL 1779992, at *3 (E.D. Va. Apr. 29, 2010) (explaining that "an order granting a demurrer is a decision on the merits . . . and is entitled to preclusive effect"). Second, Watson had sued several of the same defendants here as she did in the prior litigation, including Newman, HPD, Keohane, Allen, Terry, Hirn, Orange, Taylor, Grant, Johnson, Sciacca, and Whittington.

Finally, Watson's instant claims address the "same occurrence" and "same . . . conduct" as the prior state-court suits. *Columbia Gas Transmission*, 833 F. Supp. 2d at 558. The two previous lawsuits addressed the defendants' involvement in Howlett's conduct as a CI, his death, and his funeral. The claims therefore arise from a "common nucleus of operative facts." *See Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 156, 795 S.E.2d 887, 898 (2017) (quoting Restatement (Second) of Judgments § 24 cmt. b). And Watson's previous lawsuits alleged negligence, wrongful death, and IIED. Reasonable litigants would expect a plaintiff to raise related torts from the same alleged conduct—such as those raised in the instant claims—in the original litigation. *See id.* at 152–153, 896 (considering "whether [the claims'] treatment as a unit conforms to the parties' expectations or business understanding or usage"). Because Watson has tried to bring substantively the same claims against the same defendants in this case that she previously brought in her state-court cases, claim preclusion applies.

For the foregoing reasons, res judicata precludes Claim I and Claim II[16] against Newman and the following Hopewell defendants: HPD, Keohane, Allen, Terry, Hirn, Orange, Taylor, Grant, Johnson, Sciacca, and Whittington.  Accordingly, the Court will dismiss Claims I and II against those defendants.

### b. Statute of Limitations

That leaves Claim I and Claim II against the defendants who Watson did not sue previously: RCJA defendants Romero and Coghill; Hopewell defendants Hewett, McCurry, Griffin, Smith, and Leon; and Morriss.  Those defendants argue that the statute of limitations has run on Watson's claims against them.

Watson's state-law claims for negligence, wrongful death, and IIED carry statutes of limitations of two years.  Va. Code § 8.01-243(A) (negligence and IIED); *id.* § 8.01-244 (wrongful death).  Generally, the "duty-breach-harm sequence for a tort claim, when complete, triggers the accrual of . . . a right of action upon the date of damage or injury," meaning that is the point at which the statute of limitations begins to run.  *See Kern v. Wells Fargo Bank, N.A.*, 296 Va. 146, 158–59, 818 S.E.2d 779, 784 (2018).  In this case, the statute of limitations for Watson's negligence and wrongful-death claim began running from the day of Howlett's death—the time of the injury.  *See id.*; Va. Code § 8.01-244 (requiring a "personal representative of the decedent" to bring a wrongful-death claim "within two years after the death of the injured person").  And the

---

[16] Res judicata and the statute of limitations bar Claims I and II as both § 1983 claims and state-law claims.  And notwithstanding res judicata and the lapsed statute of limitations, Watson cannot bring a wrongful-death action *pro se* because she is not the sole beneficiary of her son's estate.  *See Benton v. Layton*, 628 F. Supp. 3d 661, 668 (E.D. Va. 2022).  In her 2020 Chesterfield complaint, Watson listed Howlett's other statutory beneficiaries as "Kevin W. Howlett (father), Adam C. Howlett (brother), and Michael Todd Howlett (brother)."  (ECF No. 11-1, at 3.)  *See* Va. Code § 8.01-53(A)(ii).

statute of limitations for her negligence and IIED claims stemming from the defendants' actions at Howlett's funeral began running the day of the funeral, August 3, 2018. *See Kern*, 296 Va. at 158–59, 818 S.E.2d at 784.

Howlett died on or around July 28, 2018, and his funeral was August 3, 2018. Thus, the statute of limitations for Watson's state-law tort claims lapsed by August 3, 2020, at the latest. She filed this lawsuit on October 31, 2023. Accordingly, the statute of limitations bars Claims I and II against defendants Romero, Coghill, Hewett, McCurry, Griffin, Smith, Leon, and Morriss.

\*       \*       \*

Because Watson's complaint does not plausibly plead her § 1983 claims, and because claim preclusion and the statutes of limitations would bar any similar state-law claims, the Court will dismiss Claims I and II against all the defendants named in those claims.

### B. Claims III, IV, and V

Watson appears to allege that certain defendants violate the Fourteenth Amendment by "failing to protect" Howlett as a "pretrial detainee" (Claim III), deliberately fabricating evidence (Claim IV), and deliberately or recklessly suppressing evidence (Claim V). (ECF No. 3, at 23.) None of these claims succeed.

Claim III fails because, according to the facts as alleged in the complaint, Howlett was not in pretrial custody when he died, so the Fourteenth Amendment's protections did not apply. *See Brown v. Harris*, 240 F.3d 383, 388 n.6 (2001) (describing the Fourteenth Amendment's "deliberate indifference" standard for "both inmates and pretrial detainees").

Her fabrication-of-evidence claim, Claim IV, alleges that officers fabricated the capias issued on July 20, 2018. But even if the capias were considered "evidence," and even if it were fabricated, "[f]abrication of evidence alone is insufficient to state a claim for a due process

13

violation." *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014). A plaintiff instead "must plead adequate facts to establish that [a] loss of liberty—i.e., his conviction and subsequent incarceration—resulted from the fabrication." *Id.* (citing *Washington v. Wilmore*, 407 F.3d 274, 282–83 (4th Cir. 2005)). Yet the police never arrested Howlett based on the capiases.

And finally, Claim V fails because *Brady* obligations attach only when a person is prosecuted, and Howlett never faced prosecution. *See Owens v. Baltimore City State's Attys. Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The Court will therefore dismiss Claims III, IV, and V.

## C. Claim VI

Generously construed, Watson's *Monell* claim alleges that Hopewell and HPD have an unlawful practice or custom of "consistently ignor[ing] and actively violat[ing]" Virginia's overdose-amnesty statute. (ECF No. 3, at 31.) That statute provides people with immunity from "arrest or prosecution" for certain drug-related crimes when they seek medical assistance for overdoses. Va. Code § 18.2-251.03. But to state a claim under *Monell*, a plaintiff must allege either an express unconstitutional policy or more than a "single violation" of constitutional rights. *See Spell v. McDaniel*, 824 F.2d 1380, 1387–89 (4th Cir. 1987). And, as previously explained, Virginia's overdose-amnesty statute does not establish federal rights. Watson has therefore not plausibly pleaded a *Monell* claim, and the Court will dismiss Count VI.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the defendants' motions to dismiss and motion for judgment on the pleadings with prejudice, (ECF Nos. 10, 25, 28, 31), and declines to grant Watson leave to amend her complaint.

The Court will issue an appropriate Order.

14

Let the Clerk send a copy of this Order to all counsel of record and to the *pro se* plaintiff.

Date: __21__ August 2024
Richmond, VA

/s/

John A. Gibney, Jr.
Senior United States District Judge